IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

LAUREN MILLER

        PLAINTIFF,

v.                                               Case No.

CITY OF AURORA.

        Defendants.

## COMPLAINT

**TO THE HONORABLE COURT**:

Comes now PLAINTIFF, LAUREN MILLER (hereinafter "PLAINTIFF" or "MILLER"), by and through her attorneys, GIAMANCO LAW PARTNERS, LTD, and herein submits her Complaint at Law against the Defendant, CITY OF AURORA (hereinafter "CITY"). PLAINTIFF Complains as follows:

## SUMMARY OF CLAIMS

1. This Complaint arises out of Defendant's violations to Title VII of the Civil Rights Act of 1964 ("Civil Rights Act"), 42 U.S.C. §2000e et seq.; and The Equal Pay Act ("Equal Pay"), 29 U.S.C. § 206; with respect to: (1) their disparate treatment and discrimination toward Plaintiff based on her gender; (ii) their retaliation against Plaintiff for opposing and complaining about the discriminatory and harassing conduct to which she was subjected; and, (iii) their failure to take reasonable steps to prevent that discriminatory and harassing conduct from occurring.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over the federal claims based on federal question jurisdiction, 28 USC §1331 and 1343, inasmuch as it arises under 42 U.S.C. §2000e, 42 U.S.C. §1981a and 29 U.S.C. §206(d). Venue is also proper.

3. This Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiff filed two charges against the Defendants before the EEOC in Chicago, IL, alleging discrimination due to Gender and Retaliation. Notices of Right to Sue were issued by the Agency on March 10, 2022.

**PARTIES**

5. Plaintiff, LAUREN MILLER, is a 39-year-old female resident of Bolingbrook, Illinois, who was employed by the Defendant at all relevant times and is currently employed by the Defendant.

6. Defendant CITY OF AURORA is a government entity who administers the city of Aurora, Illinois and its dependencies.

**FACTUAL ALLEGATIONS**

7. MILLER started to work for the CITY OF AURORA on or around December 2012 as a Help Desk Technician in the I.T. Department. In March 2016, Plaintiff was sworn into a position of Police Officer. On or around November of 2016, MILLER resigned from her position as a Police Office. Her salary at the time of her resignation was $30.83 per hour.

8. On or around January of 2017, MILLER was recruited by the CITY as a Temporary Employee. Due to the number of hours worked by MILLER, which far exceeded the

amount of hours allowed for temporary employees, the CITY began contributing to Plaintiff's IMRF pension from that moment forward.

9. On March 2018, Plaintiff was offered a permanent position with the City of Oak Brook, which included a salary of $67,000 and benefits. MILLER presented Oak Brook's offer letter to her direct supervisor, Ken Nelson. A few days later, MILLER met with Nelson and his supervisor, Shanita Thompson to discuss Plaintiff's offer from Oak Brook and all three talked about alternatives to keep MILLER in her position, due to the value of her work and her great performance. Nelson and Thompson discussed using the salaries of two unfilled position in the Police Department to match MILLER's salary to her comparable peer, Jeff Hughes, who earned $77,000 per year and provide her with benefits to avoid losing her to Oak Brook.

10. On or around late March or early April of 2018, the CITY'S Human Resources Director, Alisia Lewis, offered MILLER a position as System Analyst I, with a salary of $65,000.00, plus 2 weeks of paid vacation per year, which MILLER declined. During a follow-up phone conversation MILLER had with Lewis to discuss her rejection to the offer, MILLER requested to be paid equally than her peers based on her degree, certifications and experience among other qualifications. A few days later, Human Resources emailed MILLER a new offer with a salary of $67,000.00, plus 3 weeks of paid vacation, retroactive to March of 2018.

11. MILLER's supervisors and coworkers asked Plaintiff to accept the offer and her supervisors promised to work towards getting her paid equally to others in the same position. MILLER eventually accepted the job offer from the CITY as a System Analyst I, with a salary of $67,000.00 plus 3 weeks paid vacation.

12. On or around May of 2020, upon reviewing her accrued vacation, MILLER became aware that her vacation balance was inaccurate based on the job offer she had received and

accepted, as she had far less vacation days that what she was supposed under the offer she received.

13. MILLER requested the CITY's Human Resources Department to review and amend her vacation accrual to correspond to the offerings made and accepted by her back in April of 2018, but they denied her request citing a miscommunication error. The CITY did honor the same request made by male peers.

14. MILLER's salary was never matched to her peers and the CITY continuously denied her any promotions or advancements in both positions and pay grades, despite her qualifications and while Plaintiff performed the exact same duties and responsibilities as her peers. At the time of these events, MILLER was the only female in the I.T. Division.

15. Despite her years of service, MILLER earned far less than every single male employee in the I.T. Division, regardless of their years of service, qualifications and certifications. Plaintiff earned an average of $17,000 - $19,000 less per year than her male counterparts.

16. On July 1st, 2020, MILLER filed a charge against the CITY with the EEOC for gender discrimination and equal pay.

17. Subsequently, MILLER was disciplined and mandated to attend indefinite professional development sessions, under the threat of losing her job if she did not comply, while similarly situated employees who did not engage in protected activity were not subjected to similar treatment.

18. The CITY, through Plaintiff's supervisors, Michael Pegues and Jeff Anderson as well as through HR Chief Director Alisia Lewis, engaged in threatening, aggressive and harassing conduct towards MILLER, throughout meetings, email correspondence and day to day operations.

19. MILLER received written warnings, verbal and written reprimands, poor reviews and was placed in a performance improvement plan which included indefinite coaching sessions without any merit.

20. Prior to her filing of the EEOC charge against the employer, MILLER had never received any complaints as to her work performance.

21. MILLER rebutted the reprimands received and continuously asked for Human Resources to intervene in the retaliatory actions of her supervisors to no avail.

22. On December 15, 2021, MILLER filed a second charge against the CITY with the EEOC for retaliation.

23. The CITY's conduct toward MILLER only worsened after her second charge was filed and Plaintiff had no option but to request a transfer to a position in another division, with less pay.

24. In her request for transfer, MILLER also requested to be awarded an additional week of vacation time, which was denied, once again by the CITY.

### FIRST CAUSE OF ACTION
### Federal Equal Pay Act
### 29 U.S.C. §206, et seq.

25. PLAINTIFF incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

26. The CITY has discriminated against MILLER in violation of the EPA, 29 U.S.C. §206(d). The CITY has paid MILLER less than similarly situated male colleagues performing substantially similar work on jobs the performance of which requires similar skill, effort, and

responsibility, and which are performed under similar working conditions within the same establishment.

27. The differential in pay between male and female employees is due to sex and not due to seniority, merit, quantity or quality of production, or any other factor other than sex.

28. The CITY did not act in good faith, and cause, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C §255(a).

29. As a direct result of specific employment policies, patters, or practices, MILLER has suffered damages including, but not limited to, lost past and future income, compensation, benefits, and other pecuniary loss not presently ascertained.

30. As a further direct and legal result of the acts and conduct of Defendant, MILLER has been caused to and did suffer and continues to suffer severe and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms. The exact nature and extent of said injuries is presently unknown to Plaintiff. Plaintiff does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and based thereon alleges, that some, if not all, of the injuries are reasonably certain to be permanent in character.

31. Because the CITY's misconduct was pervasive, willful, malicious and oppressive, Plaintiff is further entitled to punitive damages in an amount sufficient to deter Defendant from engaging in such misconduct in the future.

## SECOND CAUSE OF ACTION
### Gender Discrimination and Disparate Treatment
### Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq., as amended by the Lily Ledbetter Fair Pay Act of 2009

32. PLAINTIFF incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

33. The CITY has violated Title VII because the CITY knowingly and purposefully discriminated against MILLER based on her sex. The CITY has engaged in an intentional and systematic policy, pattern, or practice of discrimination against MILLER.

34. The CITY has intentionally discriminated against MILLER in violation of Title VII with respect to, among other things, starting salary, job grade, steps, benefit accrual, annual ratings and reviews, salary increases, promotions, job assignments and a hostile work environment. The employer-wide policies, patterns, or practices are intended to and do have an effect of discriminating against MILLER because of her sex. The CITY continued these policies, patterns, or practices even after it knew or should have known of their discriminatory impact based on sex.

35. MILLER was and is qualified for her job and performed as well or better than similarly situated male employees.

36. The CITY has violated Title VII because of its employment policies, patterns, or practices have caused Plaintiff to receive less valuable conditions and privileges of employment than male employees working for the CITY.

37. When MILLER objected to the CITY's discriminatory practices, the CITY took

adverse actions against her with the purpose of retaliating because of her assertion of her right and for her participation in protected activities, including but not limited to denying her benefits, threatening her with the loss of her job, placing Plaintiff in an indefinite performance improvement plan, giving her verbal and written warnings and reprimands, and creating a hostile work environment, to the point where MILLER had no option but to request a transfer to another department.

38. As a direct result of specific employment policies, patters, or practices, MILLER has suffered damages including, but not limited to, lost past and future income, compensation, benefits, and other pecuniary loss not presently ascertained.

39. As a further direct and legal result of the acts and conduct of Defendant, MILLER has been caused to and did suffer and continues to suffer severe and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms. The exact nature and extent of said injuries is presently unknown to Plaintiff. Plaintiff does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and based thereon alleges, that some, if not all, of the injuries are reasonably certain to be permanent in character.

40. Because the CITY's misconduct was pervasive, willful, malicious and oppressive, Plaintiff is further entitled to punitive damages in an amount sufficient to deter Defendant from engaging in such misconduct in the future.

## THIRD CAUSE OF ACTION
### Retaliation under the Federal Equal Pay Act

41. Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set

forth herein.

42. MILLER engaged in protected activities against the CITY including objecting to discriminatory practices, discriminatory acts, policies, and procedures as set forth above.

43. The CITY took adverse actions against the Plaintiff, in violation of 29 U.S.C §215(a)(3), with the purpose of retaliating against her because of MILLER's participation in protected activities, including but not limited to denying her benefits, threatening her with the loss of her job, placing Plaintiff in an indefinite performance improvement plan, giving her verbal and written warnings and reprimands, and creating a hostile work environment to the point where MILLER had no option but to request a transfer to another department.

44. As a direct result of specific employment policies, patters, or practices, MILLER has suffered damages including, but not limited to, lost past and future income, compensation, benefits, and other pecuniary loss not presently ascertained.

45. As a further direct and legal result of the acts and conduct of Defendant, MILLER has been caused to and did suffer and continues to suffer severe and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms. The exact nature and extent of said injuries is presently unknown to Plaintiff. Plaintiff does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and based thereon alleges, that some, if not all, of the injuries are reasonably certain to be permanent in character.

## JURY DEMAND

46. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, PLAINTIFF demands a trial by jury in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, LAUREN MILLER, prays for judgment against Defendant, the CITY OF AURORA as follows:

a. For general and special damages, according to proof;

b. For liquidate damages;

c. For punitive damages, according to proof;

d. For injunctive and/or equitable relief;

e. For pre-judgment and post-judgment interest;

f. For reasonable attorney's fees;

g. For costs of suit incurred; and,

h. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Respectfully submitted,

Dated: June 7, 2022

*s/ Melisa Quinones*
Attorney No. 6329075
melisa@glawpartners.com

Attorneys for Plaintiff Horace Stewart
GIAMANCO LAW PARTNERS, LTD.
107 W Boughton Rd.
Bolingbrook, IL 60440
(t) 630-635-5555
Email Service of documents:
attorney@glawpartners.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Melisa Quinones