IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lauren Miller,<br><br>        Plaintiff,<br><br>v.<br><br>City of Aurora,<br><br>        Defendant. | Civil Action No. 22 CV 02964<br><br>Hon. Virginia M. Kendall |

**CITY'S MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FRCP 50(a)**

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant City of Aurora ("Defendant" or "City"), by and through its attorneys, respectfully moves for this Court to enter judgment as a matter of law on Plaintiff's retaliation claim under the Equal Pay Act ("EPA").

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 50(a):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

Under Rule 50, the motion, which "may be made at any time before the case is submitted to the jury," must specify the judgment sought, as well as the law and facts entitling the movant to the judgment. Fed. R. Civ. P. 50(a)(2). The court "should review all of the evidence in the record," drawing "all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

## BACKGROUND

Plaintiff's case involves two claims under the EPA: (1) a wage disparity claim; and (2) a retaliation claim. (ECF No. 1); *see also* 29 U.S.C. § 206(d), § 215(a)(3). The instant *Motion* concerns Plaintiff's retaliation claim. For that claim, Plaintiff contends that the City retaliated against her for filing an EEOC charge by issuing her four warnings or reprimands (one oral and three written), which purportedly resulted in a "constructive discharge" that forced Plaintiff to apply for a position in a different City department in her same building. (ECF No. 1; testimony at trial).[1]

## ARGUMENT

**I.  A Reasonable Jury Has No Basis to Find for Plaintiff On Her Claim That She Was Constructively Discharged.**

The evidence in the record, even when viewed in the light most favorable to Plaintiff, shows that Plaintiff was not constructively discharged, and therefore, Plaintiff's retaliation claim fails as a matter of law. The Seventh Circuit recognizes two general theories of constructive discharge. *See, e.g., Ziccarelli v. Dart*, 35 F. 4th 1079, 1091 (7th Cir. 2022). Under the first theory, a plaintiff can prove constructive discharge by showing that he or she was forced to resign due to "working conditions even more egregious than that required for a hostile work environment claim." *Id.* (internal quotations omitted). To prevail under the second theory of constructive discharge, a plaintiff must show "that her working conditions had become intolerable" when "the *employer's actions* communicate to the employee that she immediately and unavoidably will be terminated." *Id.* (quoting *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F. 3d 513, 528-529 (7th Cir. 2015)).

---

[1]  As the parties are still in trial, the City has summarized the testimony to the best of its ability without the benefit of a transcript.

Here, Plaintiff never resigned from the City. Instead, Plaintiff simply applied for another position in a different City Department, where she remains employed through the present day. Plaintiff went from (1) being part of the IT Department and performing work for the Police Department to (2) being part of the Police Department and doing work for the Police Department. It was *Plaintiff* who initiated her own transfer. There is no evidence in the record that the City had any plans to transfer Plaintiff from her role in the IT Department. Instead, it merely granted *Plaintiff's* request to change roles. The City had no obligation to grant her request and could have told her no. In fact, if the City had not acquiesced to Plaintiff's request, the so-called "constructive discharge" (moving from one City Department to another) would have never happened.

Even assuming, *arguendo*, that Plaintiff's voluntary request for an intra-City transfer constitutes a constructive discharge despite the fact that she did not resign, she cannot prove a constructive discharge under either theory required by this Court. Under the first theory, Plaintiff failed to adduce evidence that her working conditions, *from the standpoint of the reasonable employee*, had become so unbearable, *see E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F. 3d 326, 331 (7th Cir. 2002), that resignation was an appropriate response, *McPherson v. City of Waukegan*, 379 F. 3d 430, 440 (7th Cir. 2004) (citing *Pennsylvania State Police v. Suders,* 124 S. Ct. 2342, 2346 (2004)). "The Seventh Circuit has recognized constructive discharge in a few cases that involved extreme conduct," *Boykin v. Ill. Dep't of Juv. Just.*, No. 23-CV-4109, 2025 WL 640050, at *7 (N.D. Ill. Feb. 27, 2025), such as a threat to a plaintiff's personal safety, *Chapin v. Fort-Rohr Motors, Inc.*, 621 F. 3d 673, 679 (7th Cir. 2010). For example, a constructive discharge has been found where harassment included the repeated use of a noose and implied threats of violence, *Porter v. Erie Foods, Int'l, Inc.*, 576 F. 3d 629, 640 (7th Cir. 2009), and where a supervisor

brandished a firearm and held it to plaintiff's head. *See Taylor v. W. & S. Life Ins. Co.*, 966 F. 2d 1188, 1198–99 (7th Cir. 1992).

By contrast, the Seventh Circuit, and the district courts within this Circuit, have found a range of "unpleasant and even embarrassing actions to be tolerable and therefore insufficient to establish constructive discharge." *Simpson v. Borg-Warner Auto., Inc*., 196 F. 3d 873, 877 (7th Cir. 1999); *see also Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1065-66 (N.D. Ill. 2018) (finding insufficient evidence for constructive discharge where plaintiff alleged technical telecommuting issues, excessive discipline by supervisors, and pushback about job titles and responsibilities); *Cigan v. Chippewa Falls Sch. Dist*., 388 F. 3d 331, 333 (7th Cir. 2004) (finding a workplace does not become intolerable or unbearable merely because a "prospect of discharge lurks in the background"); *Barker v. YMCA of Racine,* 18 F. App'x 394, 398-99 (7th Cir. 2001) (finding emails implying termination, a poor performance appraisal, and shunning by supervisors is not the type of "egregious behavior" to support a constructive discharge claim); *Lindale v. Tokheim Corp*., 145 F. 3d 953, 956 (7th Cir. 1998) (finding a failure to promote an employee as insufficient for constructive discharge); *Harriston v. Chicago Tribune Co.*, 992 F. 2d 697, 705 (7th Cir. 1993) (finding arbitrary reprimand, exclusion from office activities, and being given the least lucrative sales territories was insufficient to establish constructive discharge).

Similar to the above decisions, no reasonable employee in Plaintiff's situation would have found the working conditions so intolerable that he or she was compelled to resign. Four reprimands fall far short of the standard required for this theory—*i.e.*, retaliation even more egregious than that required of a hostile work environment claim. The record is devoid of "severe, pervasive or extreme conduct" on the City's part. *Miller v. City of Aurora*, No. 22 C 02964, 2025 WL 947908, at *9 (N.D. Ill. Mar. 29, 2025). In fact, this Court already concluded in its summary

judgment decision that "no reasonable juror could find that [Plaintiff] faced a hostile work environment" and that Plaintiff fell "woefully short" on establishing the elements for one. *Id.* The evidentiary record at trial compels the same finding now. In fact, at trial, Plaintiff was effusive about her time in the IT Department, asserting that she "loved" her job and did not leave the IT Department earlier because no one wants to pursue a new job if you have a great job.

Here, the evidentiary record falls far short of establishing intolerable work conditions that forced Plaintiff to apply for a job with a different department. Plaintiff's evidence of such is limited to one oral and three written reprimands (the first of which occurred nearly seven months after her EEOC charge). Plaintiff tried to claim her reprimands were "scary," but admitted she sent a coworker a message at work where she stated she was "LMAO" (i.e. laughing my ass off) about it. She also admitted that the reprimands were just that—reprimands. They did not result in a suspension, loss of pay or benefits, denial of vacation time, or any other material changes to her job. Plaintiff also further conceded that she does not even know how long the reprimands remain in her file. While Plaintiff may not have been happy to receive a reprimand, such reprimands certainly would not, from a reasonable employee's perspective, make the work environment so unbearable that an employee would feel forced to apply for a different job. In sum, the evidence is insufficient to establish a constructive discharge under the first theory.

Nor does the evidence establish a constructive discharge under the second theory. The second form of constructive discharge requires proof that an employer did something that would cause a reasonable person in the plaintiff's position to believe she was about to be fired. *See Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 WL 2062027, at *18 (E.D. Wis. July 23, 2025) (citing *Scaife v. VA*, 49 F. 4th 1109, 1116 (7th Cir. 2022)). The plaintiff's firing must be "an imminent and inevitable event;" in other words, it must be "a situation where the 'handwriting was

on the wall' and the plaintiff quit 'just ahead of [the] fall of the axe.'" *Chapin v. Fort-Rohr Motors, Inc.*, 621 F. 3d 673, 680 (7th Cir. 2010) (citation omitted); *see also Lopez v. Vill. Disc. Outlet Inc.*, No. 23 C 16201, 2024 WL 3688709, at *3 (N.D. Ill. Aug. 6, 2024) (finding plaintiff had failed to provide a basis to infer that her employer's actions suggested to her that it planned to terminate her).

Here, the City did not inform or in any way signal to Plaintiff that her time with the City was coming to an end or that her job security was in peril. Notably, in denying the City's *Motion for Summary Judgment*, the Court relied, in part, on Plaintiff's alleged claim that Commander Mike Doerzaph and Sergeant Ken Thurman offered her the Digital Evidence Custodian position in order to "prevent [her] from being fired." (ECF No. 65, p. 7). However, when actually called to testify at trial, Plaintiff never mentioned this purported interaction with Doerzaph or Thurman, apparently abandoning it.

Plaintiff's only attempt to point to a supervisory comment about retaliation is one isolated alleged comment from Jeff Anderson that she took out of context. Plaintiff claimed that when Anderson disciplined her in April 2021 for (again) violating the IT visitor policy, Plaintiff sought direction from Chief Ziman and Internal Affairs, and Anderson made a comment about Chief Ziman and Internal Affairs giving her performance reviews or continuing her employment. However, because Plaintiff was seeking direction from someone who was not her supervisor, Anderson, to the extent this was said, was clearly referring to the importance of complying with the Plaintiff's chain-of-command and reminding her that she reported to him.

No reasonable person would assume that such a reference automatically equates to a warning that termination was imminent. Indeed, termination was clearly not imminent, as Anderson's statement was made approximately eight months before Plaintiff transferred to a new

role. In addition, the City clearly provided Plaintiff with opportunities, such as inviting her to a high-level Hexagon meeting in fall of 2021. An employer seeking to terminate an employee would hardly invite that employee to such a high-level meeting and provide her with an opportunity to speak at it.

In sum, the evidentiary record here comes nowhere close to satisfying the high standard for constructive discharge claims.

**II.     Plaintiff's Retaliation Claim Fails Because There is No Evidentiary Support for Plaintiff's Constructive Discharge Theory, and Plaintiff's Reprimands Do Not Constitute Adverse Employment Actions Due to the Lack of Any Detriment to a Term or Condition of Employment.**

Because there is no evidence of a constructive discharge, Plaintiff's retaliation claim fails as a matter of law, and she is not entitled to recover any damages for that claim. To make out a retaliation claim under the EPA, Plaintiff must establish that (a) she engaged in protected activity under the Act; (b) she suffered an adverse employment action; and (c) there is a causal connection between the two. *See Melgoza v. Rush Univ. Med. Ctr.*, 499 F. Supp. 3d 552, 569 (N.D. Ill. 2020)

However, as demonstrated herein, the evidentiary record does not support Plaintiff's claim of a constructive discharge. Plaintiff's four reprimands obviously did not result in any loss of pay or any other material change to her working conditions. "[R]eprimands or performance improvement plans do not in themselves constitute adverse employment actions without some additional showing of detriment to a term or condition of employment." *Miller v. City of Aurora*, No. 22 C 02964, 2025 WL 947908, at *9 (N.D. Ill. Mar. 29, 2025); *see also Langenbach v. Wal-Mart Stores, Inc.*, 761 F. 3d 792, 799 (7th Cir. 2014) (negative performance review and a performance improvement plan were not adverse actions). There is absolutely no basis for concluding that Plaintiff's work life was more intolerable than the typical hostile work environment seen in the Title VII context.

Because Plaintiff cannot establish an adverse employment action—a required element of an EPA retaliation claim—the Court must resolve the issue of alleged retaliation against Plaintiff and grant judgment as a matter of law in favor of Defendant on the EPA retaliation claim.

## CONCLUSION

As demonstrated herein, a reasonable jury would <u>not</u> have a legally sufficient evidentiary basis to find for the Plaintiff on her retaliation claim, and thus, the Court should resolve this claim against Plaintiff and grant the City judgment as a matter of law on this claim.

Respectfully submitted,

*/s/ James Powers*

James Powers
Clark Baird Smith LLP
9550 W. Higgins Rd.
Suite 600
Rosemont, IL 60018
P: (847) 378-7700
jpowers@cbslawyers.com
ARDC No. 6256540