**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAUREN MILLER, | ) | |
| *Plaintiff*, | ) | No. 22 C 2964 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CITY OF AURORA, | ) | |
| *Defendant*. | ) | |

## OPINION AND ORDER

Plaintiff Lauren Miller sued her employer, the City of Aurora (the "City"), for wage discrimination and retaliatory constructive discharge. After a five-day trial, a jury returned a verdict in Miller's favor on the wage discrimination claim and in the City's favor on the retaliation claim, awarding Miller $150,000 in damages. The City now moves to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). For the reasons stated below, the Court grants the City's Motion [141].

## BACKGROUND

Miller began working for the City in December 2012 as a Help Desk Technician in the Information Technology ("IT") Department. In January 2017, after briefly working as an Aurora Police Officer, she was rehired into the IT Department as a temporary employee. Following negotiations over the position and salary, the City transferred her into the position of System I Analyst in March 2018. In this role, Miller worked on various projects with her colleague Jeff Hughes. As a System Analyst II, Hughes received a higher salary than Miller.

In September 2020, Miller filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she was not being paid the same as Hughes in violation of

the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act ("Title VII"). Beginning in April 2021, Miller was reprimanded and written up several times for various alleged infractions. In December 2021, Miller quit her job as a System Analyst I. She accepted a lower-paying position as a Digital Evidence Custodian with the police department, where she currently works.

Miller sued the City in 2022, alleging the City violated the EPA and Title VII by paying her less than her male colleagues when she was in the System Analyst I position. (Dkt. 1). She also asserted a retaliation claim under the EPA, claiming the City retaliated against her after she filed her EEOC charge by giving her unwarranted reprimands and poor reviews, forcing her to leave her job for the lower-paying Digital Evidence Custodian position. (*Id.*). Following the Court's partial grant of summary judgment in favor of the City, *Miller v. City of Aurora*, 2025 WL 947908 (N.D. Ill. Mar. 29, 2025), Miller's EPA claims proceeded to trial. On February 3, 2026, the jury returned a verdict finding in favor of Miller on the wage discrimination claim and in favor of the City on the retaliation claim. (Dkt. 131). It also found that the City's violation as to the wage discrimination claim was not willful. (*Id.* at 1). The jury awarded Miller $150,000 in damages for her wage discrimination claim. (*Id.* at 2). The City now moves to alter or amend the jury's verdict under Rule 59(e), seeking a reduced damages award of $28,108.17. (Dkt. 141).

**<u>DISCUSSION</u>**

The parties' disputes begin with the correct legal standard to apply. The City seeks remittitur—a reduction of the jury's verdict—under Federal Rule of Civil Procedure 59(e) to correct what it believes to be a manifest error of law in the jury's damages award. (Dkt. 141). Miller argues that this case concerns inconsistent verdicts and, therefore, the City waived its challenge by failing to object to any perceived errors before the jury was discharged. (Dkt. 150 at

4-5). Alternatively, she contends that the only remedy for the alleged error is a new trial, not remittitur. (*Id.* at 8).

Miller mischaracterizes the City's Motion as an untimely challenge to an inconsistent jury verdict, relying on a series of Seventh Circuit cases involving alleged inconsistencies between a general verdict and answers to written questions on a verdict form under Rule 49(b). (Dkt. 150 at 5). These cases stand for the principle that a party waives an objection to internal inconsistencies in a Rule 49(b) verdict if they fail to raise the issue before the jury is discharged. *See Cont'l Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 754 (7th Cir. 2020); *Cundiff v. Washburn*, 393 F.2d 505, 507 (7th Cir. 1968); *Barnes v. Brown*, 430 F.2d 578, 579 (7th Cir. 1970); *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir. 1987).

Miller's reliance on these cases is misplaced. Here, the City does not argue that the jury's general verdict finding it liable for wage discrimination is inconsistent with its decision to award Miller damages for that claim. Instead, it argues that the award includes damages covering a period beyond what is legally permissible for a wage discrimination claim under the EPA. (Dkt. 141-1 at 1-3); (Dkt. 151 at 3-4). This is a claim of manifest legal error in the resulting judgment redressable by Rule 59(e), not an inconsistent-verdict challenge under Rule 49(b). *Compare Continental*, 973 F.3d at 751 (court construed motion as one governed by Rule 49(b) where the defendants argued that a general verdict finding them liable for unfair competition was inconsistent with the jury's decision not to award the plaintiff damages) with *Fox v. Hayes*, 600 F.3d 819, 846 (7th Cir. 2010) (ordering remittitur under Rule 59(e) after holding that the damages awarded by the jury covered a legally impermissible period for false arrest claims). Accordingly, the Court will analyze the City's challenge under Rule 59(e).

## I. Rule 59(e)

A party may move the Court under Rule 59(e) to alter or amend a judgment within 28 days of entry. Fed. R. Civ. P. 59(e). To prevail on a Rule 59(e) motion, the movant must present "newly discovered evidence that was not available at the time of trial" or point to evidence in the record that "clearly establishes a manifest error of law or fact.'" *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quoting *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996)); *see also Emerson v. Dart*, 109 F.4th 936, 943 (7th Cir. 2024) ("Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact.") (internal citation omitted). Importantly, Rule 59(e) provides a narrow and extraordinary remedy, with the moving party bearing a heavy burden. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 528 (7th Cir. 2022); *see also Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 929 (7th Cir. 2025).

The jury awarded Miller $150,000 on her wage discrimination claim and found that the City's violation was not willful. (Dkt. 131.) It did not find the City liable for retaliation. (*Id.*). Based on that verdict, the City contends that Miller's recoverable damages are limited to the wage disparity she experienced between June 7, 2020—the beginning of the applicable two-year limitations period—and December 26, 2021, when she began her new position as a Digital Evidence Custodian. (Dkt. 141-1 at 2). Relying on the damages calculations Miller presented at trial, the City maintains that the difference in her salary and overtime during that period totals $28,108.17. (*Id.* at 3). The City therefore argues that the jury's $150,000 award exceeds the maximum amount recoverable as a matter of law and, based on this error, asks the Court to remit the award to $28,108.17. (*Id.*).

In reviewing a jury verdict, courts must "accord substantial deference" to the jury's assessment of damages. *Williams v. Vill. of Dolton*, 2026 WL 622407, at *5 (N.D. Ill. Mar. 5,

2026) (citing *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985)). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of factfinding." *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir. 1989). Nonetheless, Rule 59(e) authorizes a district court to grant post-trial relief in the form of a new trial, an amended judgment, or remittitur when a jury's damages award is excessive or otherwise contrary to law. *See Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 65-66 (1966); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433 (2001); *Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020); *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639-43 (7th Cir. 2011).

Damages may be excessive if the amount of the award is not rationally related to the evidence presented at trial. *See Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 113 F.4th 777, 789 (7th Cir. 2024)*; Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015). Alternatively, damages may be excessive or erroneous as a matter of law if the jury's award goes beyond what is legally permitted. *See Duran*, 653 F.3d at 642-43 (amending jury verdict after holding that the judgment allowing the plaintiff to recover twice for the same injury constituted a manifest error of law); *Fox*, 600 F.3d at 846 (ordering remittitur on Rule 59(e) motion where the damages awarded by the jury exceeded the recoverable period for a false arrest claim); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1007 n.2 (N.D. Ill. 2016) (a trial court may award remittitur where it "finds a damage award erroneous as a matter of law"). The City invokes the latter principle here.

## II. Waiver

As a preliminary matter, Miller argues that the City waived its objection to the damage award by failing to raise it earlier. (Dkt. 150 at 4-5). In Miller's view, the City should have, but

did not, raise its arguments about the proper damages period for a wage discrimination claim before the jury was discharged. (*Id.*). As discussed above, because the City is not arguing that the jury returned an inconsistent verdict, it was not required to object to the judgment before the jury was discharged. Yet, forfeiture is still possible when bringing a Rule 59(e) motion. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (A party seeking relief under Rule 59(e) may forfeit an argument that could have and should have been made before judgment was rendered). Nonetheless, the Court finds that the City has not waived its arguments.

The City presented their arguments regarding the proper calculation of damages for each claim several times before the jury returned its verdict, raising them in a motion *in limine*, at the final pretrial conference, and at the jury instruction conference. (Dkt. 91-1); (Dkt. 137, Tr. 85:11-86:20, 87:9-22); (Dkt. 139, Tr. 211:6-212:6). Each time, Miller countered with her position that any backpay award, regardless of which claim or claims succeeded, should go through the day of judgment. (Dkt. 137, Tr. 84:1-2, 84:20-85:8); (Dkt. 218:1-6). The dispute was elided by the parties' concerns about the risk of double recovery should Miller succeed on both claims. (Dkt. 137, Tr. 87:23-90:2); (Dkt. 139, Tr. 212:19-219:21). As such, it was not resolved. That the Court did not address the City's arguments when they were raised does not mean they were waived. *See Fox*, 600 F.3d at 841 (holding that the defendants preserved arguments that they made several times to the district court before the entry of judgment); *Gonzales v. Madigan*, 2017 WL 3978703, at *3 (N.D. Ill. Sept. 11, 2017) (plaintiff did not forfeit arguments made in a Rule 59(e) motion that he had maintained throughout the litigation).

Furthermore, the City's motion challenges a legal error in the judgment that did not become apparent until the jury returned a verdict awarding $150,000 solely on Miller's wage discrimination claim. Only then could the City argue that the judgment awarded damages for this

claim beyond those recoverable as a matter of law under the EPA. *See, e.g., Duran*, 653 F.3d at 642-43 (holding that the defendant's Rule 59(e) arguments were not waived because the alleged error of law "surfaced only after judgment was entered"); *Geraty v. Vill. of Antioch*, 2014 WL 13110694, at *4 (N.D. Ill. Aug. 13, 2014) (holding that the defendant did not waive its argument about excessive damages where the defendant would not have known that the damages were excessive until after the jury returned its verdict). Accordingly, the Court will reach the merits of the City's Motion.

## III. Manifest Error of Law

The Court must first determine whether there is a manifest error of law in the jury's damages award. *See Quad/Graphics, Inc. v. One2One Commc'ns, LLC*, 529 F. App'x 784, 792 (7th Cir. 2013). The City argues that the jury's award for the wage discrimination claim constitutes a manifest error of law because it compensates Miller beyond the period for which she received unequal pay in violation of the EPA. (Dkt. 141-1 at 4). It explains that Miller should only be compensated for the difference between her pay and Hughes's during the period in which she was subject to a wage disparity. (*Id.* at 2). Miller, by contrast, contends that there is no error with the jury's verdict because backpay is available up to the day of judgment in employment cases. (Dkt. 150 at 6).

### A. Backpay for Equal Pay Act Claims

Miller asked the jury to award her backpay if she prevailed—she sought the difference between her and Hughes' pay for her wage discrimination claim and the amount she would have earned had she not been constructively discharged for her retaliation claim. Backpay is an available remedy for both wage discrimination and retaliation claims under the EPA. *See* 29 U.S.C. § 216(b). The measure of damages for each claim differs, however, because they compensate distinct

injuries. For a wage discrimination claim, backpay consists of the plaintiff's "unpaid wages"—the difference between the wages she actually received and the wages she would have received had she been paid the same as a comparator performing substantially equal work. *See* 29 U.S.C. § 216(b); *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1031 (7th Cir. 2003); *Rinaldi v. World Book, Inc.*, 2002 WL 172449, at *1. By contrast, backpay for an EPA retaliation claim compensates the plaintiff for wages lost because of the employer's retaliatory conduct—that is, the wages the plaintiff would have earned absent the retaliation. *See* 29 U.S.C. § 216(b); *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543, 552 (7th Cir. 1991).

Because these claims remedy different injuries, they necessarily encompass different periods of time. The injury underlying an EPA wage discrimination claim is the payment of unequal wages for substantially equal work. *See Terry v. Gary Community School Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018) (describing what a plaintiff must prove to establish an EPA wage disparity violation). Accordingly, backpay for a wage discrimination claim under the EPA is limited to the period during which the plaintiff was subjected to the alleged wage disparity. *See, e.g., Marcing v. Fluor Daniel, Inc.*, 1994 WL 529821, at *3 (affirming a backpay award based on the pay differential during the plaintiff's employment); *Davis v. Integrated Systems Solutions Corp.*, 2003 WL 1733111, at *2 (upholding an award of EPA backpay through the plaintiff's discharge)[1]. Once the disparity ends, so too does the injury the EPA is designed to remedy. *See Nance v. Rothwell*, 2011 WL 1770306, at *11 (explaining that the EPA does not authorize recovery

[1] The City relies on *Melgoza v. Rush Univ. Med. Ctr.*, 499 F.Supp.3d 552 (N.D. Ill. 2020) and *Karlo v. St. Augustine Coll.*, 2021 WL 2156438 (N.D. Ill. May 27, 2021) for this principle. (Dkt. 141-1 at 6-7). While neither case speaks to the proper calculation of damages for a successful EPA wage discrimination claim, both decisions underscore that a plaintiff bringing this type of claim may recover only for periods during which she performed substantially equal work as a comparator while receiving unequal wages. *See Melgoza*, F.Supp.3d at 563-64; *Karlo*, 2021 WL 2156438, at *4, n.2.

for post-termination wages because it compensates employees for wages "actually paid for work an employee performs").

Miller asserts that "settled law" recognizes that backpay in employment cases accrues through judgment. (Dkt. 150 at 6) (citing *Knutson v. UGS Corp.*, 526 F.3d 339 (7th Cir. 2008) and *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818 (N.D. Ill. 2015)). Yet neither case Miller relies on establishes such a rule for EPA wage discrimination claims. In *Knutson*, while discussing the applicable statute of limitations for the plaintiff's breach-of-contract claim, the Seventh Circuit observed that short limitations periods are sensible in certain employment cases because an employer's potential backpay liability may "mount up until the judgment if the plaintiff could not find an equivalent job." 526 F.3d at 341. The court said nothing about wage discrimination claims under the EPA, let alone the proper measure of damages for such claims.

*Stragapede* is likewise inapposite. There, the court awarded backpay stemming from a discriminatory termination under Title VII, not unequal pay under the EPA. 125 F. Supp. 3d at 823-24. Although both cases recognize that backpay may continue to accrue through judgment where the plaintiff continues to suffer lost wages because of the defendant's unlawful conduct, neither addresses the distinct injury redressed by an EPA wage discrimination claim—the payment of unequal wages for substantially equal work. *See Cullen v. Indiana University Board of Trustees*, 338 F.3d 693, 703-04 (7th Cir. 2003) (recognizing that Title VII and the EPA provide distinct remedies). Accordingly, neither *Knutson* nor *Stragapede* undermines the principle that backpay under the EPA is measured by the wage disparity itself and is therefore limited to the period during which that disparity existed.

**B. Excessive Damages**

At trial, the parties stipulated that Miller was paid less than Hughes while she worked as a System Analyst I and that she left that position and began working as a Digital Evidence Custodian on December 27, 2021. Because Miller claimed that she was paid unequally while working as a System Analyst I, with Hughes as a comparator, her recoverable "unpaid wages" under the EPA are limited to the difference between her and Hughes's compensation until the disparity ended on December 26, 2021. As noted, the jury awarded Miller $150,000 for her wage discrimination claim. This award exceeds what Miller was entitled to recover under the EPA, entitling the City to relief under Rule 59(e).

**1. Admissibility of Evidence**

Prior to trial, the City moved *in limine* to exclude evidence of Miller and Hughes's pay disparity after December 26, 2021. (Dkt. 91-1). While disputing this evidentiary issue, the parties presented their opposing positions on the appropriate damages period for Miller's wage discrimination claim—the City believed it should end when Miller began her new position and was no longer being paid unequally, while Miller asserted it should go up to the date of judgment. (Dkt. 137, Tr. 84:1-87:6). The parties' focus shifted, however, to whether admitting the requested evidence would permit double recovery if Miller won on both claims. (*Id.* at 87:23-90:2). The Court determined that it would not, since that risk could be reduced through the verdict form and jury instructions. (*Id.* at 88:11-89:19). It subsequently denied the City's motion, finding the evidence to be admissible. (*Id.* at 90:2); (Dkt. 115 at 3). It did not reach the question of how to calculate damages should Miller win only her wage discrimination claim.

The City views this decision as the source of the error with the jury's damages award, arguing that Miller should not have been permitted to introduce any evidence of damages on her wage disparity claim beyond December 26, 2021. (Dkt. 141-1 at 8). But this evidence would have

been relevant if the jury determined that Miller received unequal pay and was constructively discharged because, in that scenario, she would have been entitled to recover the wages she lost after leaving the System Analyst I position. *See, e.g., Marcing*, 1994 WL 529821, at *3 (holding that plaintiff was entitled to damages on her EPA claim—equal to the pay differential between her and her male colleagues—and to damages arising out of her constructive discharge, consisting of the difference between the salary of the job she left and the salary she could have gotten if she was promoted); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 772 F. Supp. 407, 412 (N.D. Ill. 1991) (holding that, if successful on both claims, the plaintiff would be entitled to backpay of her unpaid wages prior to her termination and the wages she would have earned up to the date of judgment absent the harassment). Accordingly, the Court did not err in denying the motion *in limine*.

**2. Trial Testimony, Jury Instructions, and Verdict Form**

The error here was not the admission of evidence concerning salary differences after December 26, 2021. Rather, the error was that the jury instructions and verdict form did not explain how to use that evidence if the jury found only for Miller on her wage discrimination claim. Although the parties disagreed before trial about the proper period for awarding backpay on Miller's wage discrimination claim, the Court was never asked to decide that legal issue. Instead, the parties litigated only whether evidence of salary differences after December 2021 was admissible. As a result, the parties' unresolved disagreement carried forward into the presentation of damages, the jury instructions, and the verdict form, ultimately producing a damages award that exceeds the amount recoverable as a matter of law. The Seventh Circuit has recognized that post-trial relief may be warranted to correct a judgment that is legally erroneous because of flaws or ambiguities in jury instructions and verdict forms. *See Duran*, 653 F.3d at 643-45; *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 825-28 (7th Cir. 2010) (granting new trial on damages where

flawed verdict form and jury instructions lead to erroneous damages award that prevented court from calculating required set-off amount).

At trial, despite acknowledging on cross-examination that she no longer worked alongside Hughes or performed substantially equal work after assuming her new position, Miller testified that she sought backpay on her wage discrimination claim through January 2026. She asked the jury to award her $188,870.13, consisting of a $174,379.19 salary differential and a $14,490.94 overtime differential between her compensation and Hughes's from June 2019 through January 2026. Miller further testified that she calculated the salary differential by subtracting her annual salary from Hughes's annual salary for each year and totaling the differences. She calculated the overtime differential for 2019 through 2021 using the overtime hours she worked and Hughes's overtime rate. For 2022 through 2026, after she left her System Analyst I position and no longer worked overtime, Miller estimated the overtime she would have earned had she remained in that position by multiplying Hughes's overtime rate by the average number of overtime hours she worked annually from 2019 through 2021. During her testimony, Miller's counsel displayed a spreadsheet summarizing her claimed salary and overtime damages for each year and the total damages sought.

At closing, Miller's counsel told the jury to award Miller $188,870.13 if they found for her on the wage discrimination claim, reiterating that this number represented the difference between her and Hughes's pay from June 2019 to January 2026. However, later in their closing argument, Miller's counsel told the jury to award this amount of they found for Miller on both the wage discrimination and retaliation claims. They urged the jury to award Miller $142,650.38 if they found for her only on the retaliation claim, explaining that this number equaled the difference between her lower-paying salary in her new job and Hughes's salary. Finally, Miller's counsel

asked the jury to award Miller an additional $250,000 in emotional distress damages if they found for her on the retaliation claim. The City did not present any arguments in their closing about the appropriate amount of damages the jury should award Miller on either claim, instead focusing on their position that she had not proved the claims at all.

As established above, a plaintiff may only recover backpay damages for an EPA wage discrimination claim for the period during which she was subjected to the wage disparity. Yet, because the focus throughout the pretrial and mid-trial discussions was on avoiding double recovery should Miller win both claims, this principle was not adequately reflected in the jury instructions or verdict form. (Dkt. 128); (Dkt. 131). The liability instructions properly distinguished the two claims. To prevail on her wage discrimination claim, the jury was instructed that Miller was required to prove that she and Hughes performed substantially equal work under similar working conditions and that the City paid her less than Hughes for that work. (Dkt. 128 at 20). The instructions for the retaliation claim stated that Miller was required to prove that the City constructively discharged her from her System Analyst I position because she filed an EEOC charge alleging unequal pay. (*Id.* at 31).

The damages instructions, however, did not make the same distinction. The jury was instructed that it should award Miller damages if it found for her on any of her claims. (Dkt. 128 at 30). The jury was further instructed that, if it awarded damages, those damages should begin on June 7, 2019 if it found the City's violation willful, or June 7, 2020 if it found the violation not willful, and in either event continue through the date of the verdict. (*Id.*). The jury was separately instructed that, if it found for Miller on her retaliation claim, it could award lost wages and benefits resulting from her constructive discharge, as well as damages for emotional distress. (*Id.* at 33.) Although these instructions identified the damages potentially recoverable for retaliation, they

never informed the jury what constituted backpay damages for the wage discrimination claim or that those damages were limited to the period of wage disparity.

The verdict form likewise distinguished among the possible liability outcomes but not the corresponding damages periods. (Dkt. 131). It first required the jury to determine liability on each claim and identified December 27, 2021 as the date Miller's retaliation claim began. (*Id.* at 1.) It then asked the jury to state the amount of damages it would award if it found for Miller on both claims, only the wage discrimination claim, or only the retaliation claim. (*Id.*). The verdict form, however, did not instruct the jury that, if it found only for Miller on her wage discrimination claim—as it ultimately did, backpay was limited to the period during which Miller allegedly received unequal pay as a System Analyst I.

*Duran* is instructive here. There, a jury returned verdicts in favor of 23 plaintiffs against six police officers and the Town of Cicero on several federal civil rights and state-law claims. 653 F.3d at 635-36. The Town had stipulated that its liability on the state-law claims was purely vicarious, making it jointly liable with the individual officers for a single damages award on each claim. *Id* at 637. Nevertheless, the jury instructions and verdict form directed the jury to award damages separately against both the officers and the Town, and the jury returned verdicts that permitted recovery against each. *Id.* at 638. After judgment was entered, the Town moved under Rule 59(e) to amend the judgment, arguing that it erroneously allowed double recovery. *Id.* at 639. The Seventh Circuit agreed, holding that the confusing jury instructions and verdict form produced a judgment containing a manifest error of law because it permitted plaintiffs to recover twice for the same injury. *Id.* at 639-42. The court remanded with instructions to amend the judgment to reflect the Town's joint liability for a single damages award on each state-law claim. *Id.* at 643.

The same principle applies here. The jury instructions and verdict form did not contain adequate guidance on how to allocate damages to Miller once the jury decided that she proved only her wage discrimination claim. Instead, when viewed together with Miller's trial presentation—which sought wage discrimination damages through January 2026—the instructions and verdict form permitted the jury to award damages through judgment, which is beyond the recoverable period for wage disparity claims. The verdict confirms that this is precisely what occurred. Miller's own damages calculations showed that, if recovery were limited to the legally permissible period ending in December 2021, her unpaid wages totaled only $28,108.17. Yet the jury awarded $150,000 on her wage discrimination claim. That award cannot be reconciled with the legally permissible damages period. Rather, it reflects compensation for a period extending beyond the alleged wage disparity—the very result the instructions and verdict form allowed. Thus, as in *Duran*, a flawed and ambiguous set of jury instructions and verdict form produced a judgment that exceeds what the law permits.

**IV. Remedy**

Having concluded that the jury's damages award reflects a manifest error of law, the Court must determine the appropriate remedy. The City asks the Court to remit the damages to $28,108.17, and argues that a new trial is not necessary. (Dkt. 141 at 2); (Dkt. 151 at 5-6). When a court finds that a damages award is excessive, remittitur is ordinarily the proper remedy. *See Bedford v. Dewitt*, 2024 WL 3070046, at *2 (N.D. Ill. June 20, 2024) (citing *Davis v. Consolidated Rail Co.,* 788 F.2d 1260, 1263 (7th Cir. 1986)). Remittitur is appropriate where there is no legal error affecting, or dispute regarding, the jury's liability determination. *See, e.g., Fox*, 600 F.3d at 846; *Heard v. Illinois Dep't of Corr.*, 2012 WL 5199616, at *1 (N.D. Ill. Oct. 22, 2012). Likewise, a new trial is unnecessary when there is an adequate basis in the record to determine how the jury

calculated damages and what the appropriate amount should be. *See Bailey v. Andrews*, 811 F.2d 366, 376-77 (7th Cir. 1987); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 827 (7th Cir. 2010).

In *Fox*, the Seventh Circuit held that the jury award of $1.6 million for the plaintiff's false arrest claim was excessive because it overcompensated the plaintiff for the period in which he was unlawfully detained. 600 F.3d at 846. The Court rejected the plaintiff's argument that the award properly covered the 84 days between the plaintiff's arrest and arraignment, noting that damages on a false arrest claim may cover only the period of detention from a plaintiff's arrest until the first issuance of process. *Id.* The Court determined that the proper damages period was only approximately 36 hours. *Id.* Because the Court could identify the error, determine the appropriate amount of damages from the record, and correct the issue without disturbing the jury's findings as to liability, it remitted the damages for the false arrest claim to an amount correlated with the proper damages period. *Id.*

Similarly, here, neither party is contesting the jury's findings as to the City's liability for wage discrimination. And, as discussed above, it is "reasonably clear what the jury did—or at least what it was trying to do." *Duran*, 653 F.3d at 643. Additionally, the Court can determine the amount of backpay Miller is entitled to on her wage discrimination claim using information in the record. During trial, Miller provided the jury with a precise breakdown of the pay differential between her and Hughes for each year between 2019 and 2026. The Court can calculate the proper damages award using this information. Accordingly, remittitur is appropriate here.

Using the information Miller presented at trial, the City asserts that Miller's backpay damages from June 7, 2020 to December 26, 2021 equal $28,108.17. (Dkt. 141-1 at 3). To verify the accuracy of the City's requested remittitur, the parties are ordered to submit to the Court Miller's Trial Exhibit 5. The Court will enter a subsequent order specifying the amount of the

remittitur. Miller will then have the option of accepting the remittitur or request a new trial on damages. *See Adams*, 798 F.3d at 541 ("A true remittitur order gives the winning party a choice: [s]he may either accept a specific reduced monetary award or [s]he may opt for a new trial."). Once this issue is resolved, the Court will turn to Miller's pending motion for liquidated damages.

**CONCLUSION**

For the foregoing reasons, the City's Motion to Alter or Amend Judgment [141] is granted in part. Upon submission of Trial Exhibit 5, the Court will enter an order reducing Miller's damages for her wage discrimination claim and giving her the option of accepting remittitur or requesting a new trial limited solely to the issue of damages on this claim.

Virginia M. Kendall
United States District Judge

Date: August 24, 2026