**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAUREN MILLER, | ) | |
| *Plaintiff*, | ) | No. 22 C 2964 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CITY OF AURORA, | ) | |
| *Defendant*. | ) | |

## OPINION AND ORDER

Plaintiff Lauren Miller sued her employer, the City of Aurora (the "City"), for wage discrimination and retaliatory constructive discharge. After a five-day trial, a jury returned a verdict in Miller's favor on the wage discrimination claim and in the City's favor on the retaliation claim. Miller now moves for an award of liquidated damages and post-judgment interest on her successful claim. For the reasons stated below, the Court grants Miller's Motion [133].

## BACKGROUND

The Court presumes the parties' familiarity with the facts of the case and includes only a summary of those relevant to resolving the current Motion. Miller worked for the City as a System Analyst I in the IT Department from March 2018 to December 2021, when she quit and accepted a lower-paying position as a Digital Evidence Custodian in a different department. In her lawsuit against the City, Miller alleged the City violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), by paying her less than her male colleagues when she was a System Analyst I and for constructively discharging her in retaliation for filing an EEOC charge. (Dkt. 1). During the five-day trial, the parties presented evidence that, while Miller was hired as a System Analyst I, she did the same work as her colleague Jeff Hughes, who was paid more than her as a System Analyst II.

They also heard evidence about the differences in Miller's and Hughes's education and work experiences and about the attempts Miller made to get promoted or receive a higher salary. On February 3, 2026, the jury returned a verdict finding in favor of Miller on the wage discrimination claim and in favor of the City on the retaliation claim. (Dkt. 131). It also found that the City's violation was not willful. (*Id.* at 1). The jury awarded Miller $150,000 in damages on her wage discrimination claim. (*Id.* at 2).

On August 24, 2026, the Court granted, in part, the City's Motion to Alter or Amend Judgment. (Dkt. 153). It held that the jury's damages award was erroneous as a matter of law because it awarded Miller damages for a period beyond which she had been subjected to unequal pay in violation of the EPA. (*Id.* at 7-15). The Court reduced Miller's damages to $27,765.40, (Dkt. 154), and Miller accepted the remittitur. (Dkt. 155). Having resolved the parties' dispute over the jury's damages award for Miller's successful wage discrimination claim, the Court turns to Miller's pending request for liquidated damages and post-judgment interest. (Dkt. 133).

**<u>DISCUSSION</u>**

Miller requests liquidated damages equal to the amount of the jury's damages award for her successful wage discrimination claim. (Dkt. 133 at 1-5). In the alternative, she asks the Court to award her prejudgment interest. (*Id.* at 6, n. 1). She also seeks post-judgment interest on any damages award the Court orders. (*Id.* at 6-7).

The EPA is part of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*., and, as such, is subject to the same remedial provisions as the FLSA. *See* 29 U.S.C. §§ 206(d), 216(d); *see also Varner v. Illinois State Univ.*, 226 F.3d 927, 932 n.3 (7th Cir. 2000); *Davis v. Integrated Sys. Sols. Corp.*, 2003 WL 1733111, at *1 (N.D. Ill. Mar. 31, 2003). Under 29 U.S.C. § 216(b), an employer who violates the EPA may be liable for liquidated damages in an amount

equal to the employee's total unpaid wages. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."); *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1031 (7th Cir. 2003) (recognizing that, under the EPA, a plaintiff may recover back wages and liquidated damages in the amount of double the backpay award).

Liquidated damages are mandatory under the EPA unless the district court finds that the employer was "acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 733 (7th Cir. 1998) (citing 29 U.S.C. § 260); *see also Lorillard v. Pons,* 434 U.S. 575, 582 (1978) (explaining that, while liquidated damages were previously awarded as a matter of right for FLSA violations, Section 260 now gives courts authority to deny or limit them). To avoid liquidated damages, an employer bears a "substantial burden" of showing they acted reasonably and in good faith. *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995). "Doubling is the norm, not the exception." *Shea*, 152 F.3d at 733 (citing *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir.1995)); *see also Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 (7th Cir. 2010) (recognizing that "liquidated damages are presumptively appropriate for FLSA violations").

To meet this burden, an employer must establish both that it acted in subjective good faith—meaning that it intended to comply with the EPA—and that its belief that it was complying with the Act was objectively reasonable. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986); *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 730 (7th Cir. 2004) (analyzing the good faith standard in the context of the WARN Act, which uses identical language to Section 260 and is interpreted in the same way); *Bankston*, 60 F.3d 1249, 1255 (7th Cir. 1995). In other

words, an employer's subjective belief that it was complying with the EPA does not establish good faith unless that belief was objectively reasonable. *Bankston*, 60 F.3d at 1255 (holding that, when deciding whether to award liquidated damages, a defendant's "subjective beliefs do not amount to proof of good faith unless they were reasonable"); *Pautlitz v. City of Naperville*, 874 F. Supp. 833, 834 (N.D. Ill. 1994) ("The employer must show that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA") (citing *Walton,* 786 F.2d at 312).

Miller argues that the City cannot show that it acted in good faith or had reasonable grounds to believe that its conduct complied with the EPA. (Dkt. 133 at 3). In determining whether an employer acted reasonably and in good faith, courts look for evidence that the employer took affirmative steps to ascertain and comply with its obligations under the Act. *See Bankston*, 60 F.3d at 1255 (holding that an employer's failure to inquire into its FLSA obligations "indicates a lack of good faith"); *Pautlitz*, 874 F. Supp. at 835 ("Failure to take affirmative action to ascertain the [FLSA]'s requirements precludes a finding of reasonable good faith."); *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 1991 WL 337535, at *8 (N.D. Ill. Dec. 26, 1991), *aff'd*, 990 F.2d 279 (7th Cir. 1993) (to avoid liquidated damages, an employer must show that it "took affirmative steps to ascertain FLSA requirements but, nonetheless, violated its provisions"). Such evidence may include that the decision-makers attended seminars, reviewed the Act, or sought professional advice about their payment practices generally or the specific compliance issue. *See Pautlitz*, 874 F. Supp. at 835; *see also Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 732 (7th Cir. 1998) (liquidated damages warranted where employer "did nothing else to ascertain its compliance with the statute, such as consulting its accountant or attorney").

The City points to actions taken by Michael Pegues, the City's Chief Information Officer, Elizabeth Coronado Abrego, an HR officer, and Shanita Lewis, the Director of HR, as evidence of

its reasonable and good-faith efforts. (Dkt. 140 at 4-8). But those actions show only that the decisionmakers considered Miller's qualifications and determined what position and pay they believed were appropriate, not that they considered whether their decisions complied with the EPA.

Pegues, for example, testified that he considered the skills and prior work experience of Miller and other IT employees in deciding to hire Miller as a System Analyst I rather than a System Analyst II. (Dkt. 138, Tr. 58:14-22, 60:16-61:3, 63:17-21, 76:18-25). He did so despite Thompson telling him that Miller should be hired as a System Analyst II because she had performed the same work as Hughes as a temporary employee. (*Id.* at 19:3-28:18). Yet there is no evidence that Pegues considered the EPA's requirements or otherwise evaluated whether Miller was being paid less for substantially equal work. Nor did he revisit his decision after Thompson continued to request Miller's promotion or when Miller filed an EEOC charge alleging wage discrimination. (*Id.* at 28:20-29:20, 84:8-10).

Similarly, Coronado Abrego testified that she knew the EPA required equal pay for substantially equal work but believed Miller's placement on the pay scale was appropriate because she considered Miller's education and experience and "internal equity." (Dkt. 139, Tr. 265:12-19, 293:21-3). But "internal equity" referred only to employees' length of service, and Coronado Abrego did not investigate the work Miller performed before making the pay decision or after Miller raised concerns about her unequal pay. (*Id.* at 258:9-22, 278:17-279:4, 296:4-7). Additionally, Miller testified that she raised her concerns about receiving unequal pay to Lewis when she received the System Analyst I offer. Lewis responded that she did not understand the technical aspects of Miller and Hughes's positions and that her offer was based on Miller's experience.

This evidence does not indicate that the City took sufficient, or even any, affirmative steps to determine whether their actions complied with the EPA. *See, e.g., Kim v. Hakuya Sushi, Inc.*, 2017 WL 4021231, at *2 (N.D. Ill. Aug. 17, 2017) (ordering liquidated damages where defendants presented no evidence that they sought legal guidance regarding whether their payment practices complied with the FLSA); *Reed v. Ogle Cnty.*, 2010 WL 11887235, at *5 (N.D. Ill. Mar. 1, 2010) (same where defendant conducted "internal research" into FLSA but did not consult with attorneys about alleged violation); *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 322 (N.D. Ill. 1995) (ordering liquidated damages on FLSA claim where there was no evidence that the defendant "undertook any efforts to determine its potential liability under the FLSA before denying payment of overtime compensation"); *Carlisle v. Carvana LLC*, 2026 WL 2110611, at *7 (S.D. Ind. Mar. 23, 2026) (same where the defendant failed to present evidence that it considered whether it was complying with the FLSA at the time of the violations).

The City argues that it acted reasonably and in good faith when it hired Miller as a System Analyst I because it worked with third-party consultants to create positions in the IT Department and set compensation. (Dkt. 140 at 5, 7-88). The City's reliance on these actions, however, does not establish reasonable good faith. Korn Ferry, a compensation analysis organization, evaluated the positions in the IT Department and assigned them to appropriate pay grades based on the positions' level of responsibility and the duties described in the job descriptions. (Dkt. 139 at Tr. 239:4-12). But the agency never made an assessment as to what title, salary, or step any individual person should be in. (*Id.* at 277:8-16). Another consulting company, Crowe LLC assessed how the City could restructure the IT Department, but the City did not use its recommendation. (Dkt. 138 at 59:24-60:14). Neither consultant evaluated whether the City's compensation practices complied with the EPA, much less whether Miller's position or salary complied with the Act.

In *Pautlitz*, the defendant, the City of Naperville, asked a consulting firm that was reviewing its compensation structure whether any of its employees should be changed to "exempt" under the FLSA. 874 F.Supp. at 835. Nevertheless, the court held that the defendant could not rely on the firm's subsequent report as evidence of its good faith because the firm did not specifically examine the status of the plaintiffs and no one at the firm was a lawyer specializing in the FLSA. *Id.* at 835-36. Here, the City did even less. The consultants' work may have informed the City's understanding of its organizational structure and compensation system, but it does not show that the City took any steps to determine whether its treatment of Miller complied with the EPA. *C.f. Durham v. Lake Cnty., Indiana*, 2022 WL 815137, at *11 (N.D. Ind. Mar. 17, 2022) (declining to order liquidated damages where the defendant hired FLSA consultants to advise it on whether the plaintiffs were in exempt roles, which was the legal matter at issue).

The City also argues that the public nature of its employee pay plans and budget-setting process counsels against imposing liquidated damages. (Dkt. 140 at 2-3). The Seventh Circuit acknowledged that "a decision made above board and justified in public is more likely to satisfy" the reasonable good faith standard. *Walton*, 786 F.2d at 312. But the transparency of the City's pay practices does not, by itself, demonstrate that the City considered whether those practices complied with the EPA when it paid Miller less than Hughes for equal work. That the public could see the salaries for System Analyst I and II positions says nothing about whether the City considered the legal implications of its decisions regarding Miller's classification and compensation. Additionally, the City points to evidence that it has policies in place prohibiting gender-based discrimination. (Dkt. 140 at 7). The fact that the City had a policy that, on its face, complied with the EPA "means nothing if it did not comply with its own policy." *Credille v.*

*Corinthian Colleges, Inc.*, 2012 WL 648610, at *3 (N.D. Ill. Feb. 27, 2012) (ordering liquidated damages after holding that the employer did not act in good faith when it violated the FLSA).

Finally, the City argues that the jury's finding that the City did not act willfully is relevant to the Court's liquidated-damages analysis. (Dkt. 140 at 8-9). If a defendant willfully violated the EPA, the statute of limitations period is extended from two years to three. *See* 29 U.S.C. § 255(a). As the Seventh Circuit explained in *Walton*, the standards for the statute of limitations and liquidated damages operate independently. 786 F.2d at 310. For awarding liquidated damages, double damages are the norm and single damages the exception, and the employer bears the burden of avoiding liquidated damages. *Id.* By contrast, the default limitations period is two years, and the employee bears the burden of establishing willfulness to obtain three years. *Id.* As such, it is "easier to get double damages than to extend the statute of limitations." *Id.* Thus, a finding of that an employer did not act willfully does not establish that the employer acted with the good faith and reasonable grounds necessary to avoid liquidated damages. *See Kim v. Hakuya Sushi, Inc.*, 7, 2017 WL 11886342, at *5 (N.D. Ill. July 5, 2017) (recognizing that the issue of willfulness is distinct from the question of liquidated damages).

In sum, the City has not met its burden to convince the Court that its actions were reasonable in good faith. *See Jackson v. Go-Tane Servs., Inc.*, 56 F. App'x 267, 273 (7th Cir. 2003). Miller and Thompson raised concerns about Miller's pay disparities multiple times before and after she accepted the System Analyst I position, and Miller formalized her concerns in an EEOC complaint of wage discrimination. Nevertheless, the City has not demonstrated that it took sufficient steps to investigate whether it was complying with the EPA. *Compare Davis v. Integrated Sys. Sols. Corp.*, 2003 WL 1733111, at *1 (N.D. Ill. Mar. 31, 2003) (evidence supported liquidated damages where plaintiff's supervisor did not increase plaintiff's compensation despite

advised that plaintiff may not be getting paid equally in compliance with EPA) *and Berger v. Perry's Steakhouse of Illinois, LLC*, 430 F. Supp. 3d 397, 409 (N.D. Ill. 2019) (ordering liquidated damages on FLSA claim where there was no evidence that employer investigated whether its fee policy complied with the law) *with Doden v. Plainfield Fire Prot. Dist.*, 1995 WL 699719, at *3 (N.D. Ill. Nov. 24, 1995) (declining to award liquidated damages where the employer reviewed FLSA materials, consulted counsel, and revised its overtime policy after being advised that its treatment of plaintiffs might violate the Act).

As such, the City has not met its burden to show that it was acting in good faith and reasonably believed its conduct was consistent with the law. Therefore, Miller is entitled to liquidated damages. Miller's remitted damages for her successful EPA wage discrimination claim are $27,765.40. The Court awards Miller an additional $27,765.40 in liquidated damages, for a total damages award of $55, 530.80. Since the Court finds that liquidated damages are warranted here, it declines to award prejudgment interest. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999). The parties agree that Miller is entitled to post-judgment interest. (Dkt. 133 at 6-7); (Dkt. 140 at 2 n.1); *see* 28 U.S.C. § 1961. The parties have entered a stipulation as to attorney's fees and costs. (Dkt. 152).

## CONCLUSION

For the foregoing reasons, the Court grants Miller's Motion for Liquidated Damages and Post-Judgment Interest [133]. Miller is entitled to $27,765.40 in liquidated damages. Miller's total damages on her wage discrimination claim are $55,530.80. The Court also awards Miller post-judgment interest accruing at the statutory rate prescribed by 28 U.S.C. § 1961.

Virginia M. Kendall
United States District Judge

Date: September 10, 2026